**Royce O. GRIFFIN, as Securities Commissioner for the State of Colorado, Plaintiff–Appellee,**

**v.**

**Robert Donald JACKSON, Sr., Defendant–Appellant.**

**No. 86CA1002.**

Colorado Court of Appeals, Div. IV.

July 7, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Suzanne A. Fasing, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Moye, Giles, O'Keefe, Vermeire & Gorrell, Richard S. Vermeire, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, Robert Donald Jackson, Sr., appeals from the trial court's judgment holding him in contempt of court and sentencing him to 120 days in jail. We affirm the judgment of contempt and remand for resentencing.

In a proceeding commenced by the Colorado Securities Commissioner (Commissioner), Jackson, in May 1985, stipulated to the entry of a final judgment that permanently enjoined him from violating the broker-dealer registration and anti-fraud provisions of the Colorado Securities Act. In February 1986, the Commissioner filed a motion for contempt, alleging that Jackson had violated the permanent injunction. Based on the Commissioner's verified motion, the trial court issued an order to show cause why Jackson should not be held in contempt.

The evidence at the contempt hearing showed that Jackson had solicited numerous individuals to apply for ten-million dollar "self-liquidating business loans." His promotional literature explained that the lenders, recent immigrants to the United States, needed individuals with correct names, addresses, and social security numbers, and a valid business need for the loan. He represented that if an applicant was selected to receive a loan, the loan would be made in such a way that it would be repaid automatically.

Jackson explained that government securities having a face value of ten million dollars would be purchased at a discount. These securities would serve as collateral for the loan, and interest earned on the securities would be used to pay the interest on the loan. The securities would then be sold at full face value to repay the principal on the ten-million dollar loan.

Jackson explained that this procedure "guaranteed" that the loan would never be in default. From the remaining loan proceeds, approximately one-million dollars would be paid to the lender's main agent and for bank and attorney fees, leaving a tax-free "fall-out" of one-million dollars to each loan recipient.

The loan applicants were required to pay a loan application fee, set by Jackson, which varied between $100 and $450. The record reflects that he collected approximately $39,000 from 155 applicants and that no loans were ever made to any of the applicants.

The trial court concluded that the loan application constituted a security because it was both an "evidence of indebtedness" and an "investment contract" under § 11–51–102, C.R.S. (1987 Repl. Vol. 4B). Accordingly, the trial court found that Jackson had violated both the broker-dealer registration and anti-fraud provisions of the permanent injunction, and it adjudged him to be in contempt of court.

## I.

The threshold issue is whether the trial court erred in ruling that the "self-liquidating" loan involved a security within the meaning of the Colorado Securities Act. We find no error.

The statutory definition of a "security" is intended to provide the flexibility needed to regulate various schemes devised by those who seek the use of money of others with the lure of profits. *Lowery v. Ford Hill Investment*, 192 Colo. 125, 556 P.2d 1201 (1976). Because the Securities Act is remedial in purpose and designed to protect the public from speculative or fraudulent schemes, we apply a broad definition to the term "security." *See People v. Milne*, 690 P.2d 829 (Colo.1984). The question whether a particular transaction involves a security depends not on the name or form of the instrument, but on the substantive economic realities underlying the transaction. *Sauer v. Hays*, 36 Colo. App. 190, 539 P.2d 1343 (1975).

The definition of a "security" in § 11–51–102(14), C.R.S. (1987 Repl. Vol. 4B), includes any "investment contract." An investment contract exists when (1) an individual invests money, (2) in a common enterprise, and (3) is led to expect profit derived from the entreprenuerial or managerial efforts of others. *Lowery v. Ford Hill Investment Co., supra; see also Jenkins v. Jacobs*, 748 P.2d 1318 (Colo.App. 1987).

An "investment of money" for purposes of the statute means that the investor must commit his assets to an enterprise or venture in such a manner as to subject himself to financial loss. *Woolridge Homes, Inc. v. Bronze Tree, Inc.*, 558 F.Supp. 1085 (D.Colo.1983). Here, the loan applicants furnished money and did so in a manner that subjected them to losses. Although Jackson at times equated the loan program to a game of chance, this does not preclude a conclusion that the application fee was an investment. The amount of speculation inherent in an investment is irrelevant to a determination of whether the investment is a security. *S.E.C. v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

A common enterprise exists when the "fortunes of the investors are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *S.E.C. v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir. 1974). *See also The Raymond Lee Organization, Inc. v. The Division of Securities*, 192 Colo. 112, 556 P.2d 1209 (1976). Here, the fortunes of the loan applicants were completely dependent upon Jackson's ability to secure the foreign money and purchase government securities that would initially secure the loans and then provide the means with which to repay the loan. Accordingly, this element of the test is also satisfied.

The third element of the test is an expectation of profits to be derived from the entreprenuerial or managerial efforts of others. Here, the inducement to the loan applicants was the potential to receive a one million dollar "fall-out," as a return on their investments. Whether a fall-out was realized depended totally on others' ability to select, purchase and sell government securities in such quantities and at such rates as to realize excess loan "proceeds" which would be made available to the nominal "lendees." The dependency of the loan applicants on third parties is illustrated by the fact that the applicants were required to execute a power of attorney, granting the lender authority to make "any and all bank arrangements necessary to complete the transaction ... and to hold [the] securities until the loan is paid in full." Because the loan applicants had an expectation of profits, and because the essential managerial efforts rested with third parties, this final element of the test is also met.

We conclude that the trial court correctly determined that the loan application agreement constituted an investment contract which is a "security" pursuant to § 11–51–102(14), C.R.S. (1987 Repl. Vol. 4B).

Because we hold that the loan application agreement constitutes a security, we need

not determine whether the agreement is an "evidence of indebtedness" also.

## II.

Jackson contends that he was denied due process of law. He asserts that he was provided inadequate notice of the charges against him; that he was denied effective assistance of his then trial counsel regarding arguments presented on the issue of whether the loan applications were "securities"; and that the adjudication of contempt was not supported by specific findings of fact. We find no reversible error.

## A.

We conclude, as a matter of law, that, although Jackson was not provided adequate notice of the anti-fraud charge against him, he received adequate notice of the broker-dealer registration charge.

■ Where the actions which constitute criminal contempt occur outside the presence of the court, a contempt sanction may not be imposed until the alleged contemner has received notice of the charge, including the nature of the act of contempt that he is alleged to have committed. C.R.C.P. 107(c); *People v. Razatos*, 699 P.2d 970 (Colo.1985). *Cf. In re the Marriage of Roberts*, 757 P.2d 1108 (Colo.App.1988).

■ Here, the verified contempt motion and citation states in general terms that Jackson had violated the prohibitions of the permanent injunction. The contempt pleadings further allege, specifically, that he violated the anti-fraud provisions of § 11–51–123, C.R.S. (1987 Repl. Vol. 4B) for activities *other* than those pertaining to the "self-liquidating" loan program. Therefore, we agree that Jackson was not sufficiently notified of his violations of the anti-fraud statute.

However, the pleadings alternatively charge him with contempt for violation of the broker-dealer registration requirements of § 11–51–105, C.R.S. (1987 Repl. Vol. 4B) in connection with his "self-liquidating" loan program. As the trial court found defendant to have violated § 11–51–105, C.R.S. (1987 Repl. Vol. 4B), we conclude that, despite the ambiguity concerning the anti-fraud violations, his due process rights to adequate notice were not infringed and the judgment of contempt was proper.

Jackson's 120–day sentence was based on his violation of both §§ 11–51–105 and 123, C.R.S. (1987 Repl. Vol. 4B). We cannot speculate whether the trial court would impose the same sentence for his violation of only § 11–51–105. Accordingly, the cause must be remanded for resentencing.

## B.

■ Jackson next argues that he was denied due process because of ineffective assistance of counsel, as a result of his counsel's failure to develop the defense that his activities in connection with the loan program did not involve securities. We are not persuaded.

■ The Sixth Amendment right to counsel afforded criminal defendants must be extended to contempt proceedings, both civil and criminal, which result in imprisonment of the contemner. *Padilla v. Padilla*, 645 P.2d 1327 (Colo.App.1982). To sustain a claim of ineffective assistance of counsel, the burden rests on Jackson to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *People v. Tackett*, 742 P.2d 957 (Colo.App.1987). We conclude that he has failed to meet this burden.

The record shows that Jackson's trial counsel did not perform below the requisite level of competence. Contrary to his assertion, trial counsel argued to the trial court that the "self-liquidating" loans did not constitute a security.

Moreover, the structure of the "self-liquidating" loan transaction was undisputed. Consequently, the question whether it constituted a security was one of law. In view of our affirmance of the trial court's resolution of this issue, there is no reasonable probability that, but for trial counsel's performance, the result here would have been different. *See People v. Tackett, supra*.

## C.

Jackson next argues that his due process rights were infringed as a result of inadequate findings of fact. Again, we disagree.

In order for a court to enter a punitive order in a criminal contempt proceeding, the court must, on supporting evidence, find that the alleged contemner's behavior constitutes noncompliance with the court order and that such conduct is offensive to the authority and dignity of the court. *See People v. Razatos, supra.* Here, the trial court made adequate findings that the "self-liquidating" loans constituted securities offered in violation of the broker-dealer provisions of § 11–51–105, C.R.S. (1987 Repl. Vol. 4B), that Jackson's conduct in this regard violated the 1985 injunction, and that his conduct was offensive to the dignity of the court. These findings are supported by the evidence.

The trial court's judgment of contempt is affirmed and the cause is remanded for resentencing.

CRISWELL and JONES, JJ., concur.