Opinion by JUDGE BERGER
*854 ¶ 1 This case requires us to address the rules that determine when an interest in a general partnership or joint venture constitutes a security under the Colorado Securities Act (Act).[1] The trial court applied a "strong presumption" that general partnership interests are not securities. We reject the strong presumption because it is inconsistent with the economic realities test-the controlling test in Colorado for identifying securities-and hold that the economic realities test, unencumbered by the strong presumption, determines when general partnership interests constitute securities.
¶ 2 The trial court also held that the measure of the venturers' business experience is their general business experience, not their experience in the specific business of the venture. We disagree and, like the United States Court of Appeals for the Tenth Circuit, hold that the proper measure of the venturers' experience is their collective experience in the business of the venture.
¶ 3 Accordingly, we vacate the trial court's judgment and remand for further proceedings.
I. Relevant Facts and Procedural History
¶ 4 Plaintiff, Gerald Rome, Acting Securities Commissioner for the State of Colorado (commissioner), appeals from a judgment dismissing his enforcement action against defendants, HEI Resources, Inc.; Charles Reed Cagle; Brandon Davis; Heartland Energy Development Corporation (HEDC); Bedrock Energy Development, Inc.; John Schiffner; and James Pollack.
¶ 5 HEI and HEDC have their principal places of business in Colorado. In 2009, the commissioner filed a complaint alleging that defendants violated the Act by using unlicensed sales representatives to offer and sell unregistered securities.
¶ 6 The allegations were based on defendants' formation and operation of several joint ventures in oil and gas exploration and drilling. To capitalize the ventures, defendants solicited individual investors by, in large part, cold-calling thousands of people across the country. Potential investors were solicited without regard to their experience or interest in oil and gas exploration.
¶ 7 If an individual contacted by telephone expressed interest in investing, defendants *855 sent the prospect an information package that included a "Confidential Information Memorandum" (CIM) and a "Joint Venture Agreement" (JVA). The terms of the JVA provide for the formation of a joint venture, organized as a general partnership under the Texas Revised Partnership Act.
¶ 8 The JVA ostensibly gives the joint venturers various rights consistent with their status as general partners. The CIM designates either HEI or HEDC as the initial "managing venturer." The managing venturer manages the day-to-day operations of the joint venture and has the authority, subject to a vote of the venturers, to enter into contracts, acquire property, operate or retain operators to operate the venture's wells, and perform other functions on behalf of the venture.
¶ 9 Although the JVA gives the venturers authority to remove the managing venturer by majority vote and to vote on issues presented by the managing venturer, the commissioner alleged that any theoretical control the venturers collectively possess under the organizational documents is illusory. He alleged that the venturers instead are dependent upon the unique entrepreneurial or managerial abilities of HEI or HEDC and are unable to exercise meaningful partnership powers.
¶ 10 The commissioner thus contended that the substance of the transaction between the joint venturers and defendants is an investment contract under which the venturers invest money with the expectation that defendants' efforts will return a profit.
¶ 11 Both the commissioner and defendants filed various summary judgment and other dispositive motions. The trial court denied the commissioner's motions but granted defendants'. It held that the commissioner was collaterally estopped[2] from arguing that, based upon the plain language of the JVAs, the joint venture interests are securities.[3]
¶ 12 The court also ruled on defendants' claim that, as a matter of law, the commissioner could not establish that the interests are securities under any of the three factors articulated in Williamson v. Tucker, 645 F.2d 404 (5th Cir.1981). Williamson provides a nonexhaustive three-factor test, adopted by Colorado courts, to aid courts in determining whether a general partnership or joint venture interest is a security. (But, as discussed extensively below, Colorado has not embraced the strong presumption, derived from Williamson, that general partnership interests are not securities.)
¶ 13 The first Williamson factor looks only at whether the partnership or joint venture agreements leave so little power in the hands of the partner or venturer that it renders the relationship between the parties tantamount to a limited partnership. Id. at 424. Accordingly, the trial court held that the collateral estoppel determination that precluded the commissioner from arguing that the interests are securities based only on the JVAs also prevented him from establishing that the interests are securities under the first Williamson factor. However, it also held that, independent from the collateral estoppel determination, as a matter of law, the interests are not securities under the first Williamson factor because it found that the joint ventures "are really general partnerships on their face."
¶ 14 The second Williamson factor looks at the knowledge and experience of the partners or venturers. Id. The court concluded that there were genuine issues of *856 material fact regarding this exception, and thus it declined to determine whether, as a matter of law, the interests are securities under the second Williamson factor. The third Williamson factor looks at whether the managing partner or venturer has a "unique entrepreneurial or managerial ability" that would preclude the other partners or venturers from replacing it. Id. The court held that there were no genuine issues of material fact by which the commissioner could prove that the venturers were so dependent on some unique ability of the managing venturer that they could not replace it, and thus, as a matter of law, the commissioner could not establish that the interests are securities under the third Williamson factor.
¶ 15 Based upon the summary judgment orders, the court limited the commissioner at trial to attempting to prove that the interests are securities (1) solely under the second Williamson factor or (2) under other economic realities surrounding their offer and sale.
¶ 16 After a seven-day nonjury trial, the court ruled that the commissioner failed to establish that the joint venture interests are securities under the second Williamson factor or under any other "catch-all economic realities."
¶ 17 The commissioner appeals, arguing that the trial court erred in (1) applying a strong presumption that general partnership or joint venture interests are not securities and (2) concluding that the relevant experience of the venturers is their general business experience, rather than their specific experience in the industry of the venture.
II. When an Interest in a Business Organization is an Investment Contract
¶ 18 The Act, sections 11-51-101 to -198, C.R.S.2014, governs the offer and sale of securities. Only transactions that involve a "security" fall under the scope of the Act. A "security" is defined to include, among other things, an "investment contract." § 11-51201(17).
¶ 19 The Act does not define "investment contract." However, "insofar as the provisions and purposes of [the Act] parallel those of the federal enactments, such federal authorities are highly persuasive." Lowery v. Ford Hill Inv. Co., 192 Colo. 125, 129-30, 556 P.2d 1201, 1204 (1976). The statutory definition of the term "security" under the Act and the federal Securities Act of 1933 "are virtually identical." Id. at 130, 556 P.2d at 1205. "Under Colorado law, a 'security' includes an 'investment contract' to the same extent as an 'investment contract' is covered under the Securities Act of 1933." Feigin v. Digital Interactive Assocs., Inc., 987 P.2d 876, 881 (Colo.App.1999). Thus, to determine when an interest in a business organization constitutes an investment contract, Colorado courts have adopted the three-part test established by the United States Supreme Court in Securities and Exchange Commission v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), which defines "investment contract" under the federal securities statutes. E.g., Lowery, 192 Colo. at 130, 556 P.2d at 1205.
¶ 20 Under the Howey test, an "investment contract" is (1) "a contract, transaction or scheme whereby a person invests his money" (2) "in a common enterprise and" (3) "is led to expect profits solely from the efforts of the promoter or a third party." Howey, 328 U.S. at 298-99, 66 S.Ct. 1100 ; see also Joseph v. Mieka Corp., 2012 COA 84, ¶ 14, 282 P.3d 509. This test is intended to "embod[y] a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." Howey, 328 U.S. at 299, 66 S.Ct. 1100 ; see also Lowery, 192 Colo. at 130, 556 P.2d at 1205.
¶ 21 In both federal and Colorado cases decided after Howey, the word "solely" in the third prong of the Howey test has not been construed literally; the "critical inquiry is instead whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." Long v. Schultz Cattle Co., Inc., 881 F.2d 129, 133 (5th Cir.1989) (internal quotation marks omitted); see also *857 Toothman v. Freeborn & Peters, 80 P.3d 804, 813 (Colo.App.2002) ; Joseph v. Viatica Mgmt., LLC, 55 P.3d 264, 266 (Colo.App.2002). The dispositive inquiry is thus whether the investor was "led to expect profits derived from the entrepreneurial or managerial efforts of others." Toothman, 80 P.3d at 811.
¶ 22 Here, as in most cases, the first and second prongs of the Howey test are not in dispute. Williamson is the leading case interpreting the third prong of the Howey test when applied to general partnerships or joint ventures. Digital Interactive Assocs., 987 P.2d at 880 (citing Williamson, 645 F.2d 404 ). Williamson "affirmed that courts should analyze the third Howey factor in a general partnership with an understanding that 'the economic reality is to govern over form and that the definitions of the various types of securities should not hinge on exact and literal tests.' " Mieka, ¶ 17 (quoting Williamson, 645 F.2d at 418 ).
¶ 23 Colorado courts likewise apply this "economic realities" approach: "[t]he question whether a particular transaction involves a security depends not on the name or form of the instrument, but on the substantive economic realities underlying the transaction." Griffin v. Jackson, 759 P.2d 839, 842 (Colo.App.1988). Consistent with this principle, this court has recognized the rule articulated in Williamson that a general partnership interest is an investment contract (and thus a security) if " 'in spite of the partnership form which the investment took,' " the partner " 'was so dependent on the promoter or on a third party that he was in fact unable to exercise meaningful partnership powers.' " Toothman, 80 P.3d at 811-12 (quoting Williamson, 645 F.2d at 424 ); see also Digital Interactive Assocs., 987 P.2d at 881.
¶ 24 Williamson lists three circumstances in which interests in a general partnership or joint venture meet the third prong of the Howey test and thus may be a security:
[a] general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.
645 F.2d at 424.
¶ 25 This formulation was intended by the Williamson court to be a nonexhaustive illustration of when an interest denominated a general partnership interest is, in fact, an investment contract. Id. at 424 n.14 ; see also Digital Interactive Assocs., 987 P.2d at 882. Other economic realities underlying the transaction may also "give rise to such a dependence on the promoter or manager that the exercise of partnership powers [is] effectively precluded." Williamson, 645 F.2d at 424 n.14.
¶ 26 We review de novo the ultimate question of whether a general partnership or joint venture interest is a security. Viatica Mgmt., 55 P.3d at 266. However, to the extent that the determination involves issues of fact, as it does here, we review the trial court's factual findings under a clear error standard, Toothman, 80 P.3d at 811, and defer to such findings if there is evidence in the record to support them, Moffett v. Life Care Ctrs. of Am., 219 P.3d 1068, 1072-73 (Colo.2009). We review de novo the court's application of the governing legal standards to the facts of the case. City of Boulder v. Farmer's Reservoir & Irrigation Co., 214 P.3d 563, 567 (Colo.App.2009).
III. The Strong Presumption
A. Williamson 's "Heavy Burden"
¶ 27 In Williamson, the Fifth Circuit explained that due to the inherent nature of a general partnership, an investor usually "retains substantial control over his investment and an ability to protect himself from the managing partner or hired manager." 645 F.2d at 424. Accordingly, "an investor who claims his general partnership or joint venture *858 interest is an investment contract has a difficult burden to overcome." Id. The Williamson court did not, however, use the term "presumption."
¶ 28 A later Fifth Circuit case applied Williamson 's three-factor test to determine whether a general partnership or joint venture interest is a security but additionally stated that, "[n]evertheless, a strong presumption remains that a general partnership or joint venture interest is not a security. A party seeking to prove the contrary must bear a heavy burden of proof." Youmans v. Simon, 791 F.2d 341, 346 (5th Cir.1986) (citing Williamson, 645 F.2d at 424 ). Thus, even though Williamson did not itself establish any presumption, the "strong presumption" applied by some courts that a general partnership or joint venture interest is not a security has become known as the " Williamson presumption."
B. The History of the Presumption in Colorado and Other Courts
1. Colorado Courts
¶ 29 No published appellate case in Colorado has expressly adopted or rejected the strong presumption that a general partnership or joint venture interest is not a security, although several cases from this court have discussed it. Mieka, ¶ 18. Williamson was first cited by this court in Digital Interactive Assocs., which adopted Williamson 's three-factor test and related analysis but did not mention the presumption. 987 P.2d at 881-82. Similarly, People v. Robb discussed Williamson but did not address the presumption. 215 P.3d 1253, 1261-62 (Colo.App.2009).
¶ 30 Toothman, which addressed whether membership interests in a limited liability partnership (LLP) are securities, held that "the presumption that a general partnership interest is not a security, as set forth in Williamson v. Tucker ... is not applicable to an LLP interest in Colorado." 80 P.3d at 811. As part of its analysis, Toothman compared LLPs to general partnerships, and, citing Williamson, stated that "[b]ecause general partners have a legal right to participate in the management of the partnership, an interest in a general partnership is presumed not to be an investment contract." Id. at 811-12. This statement is dictum, however, because general partnership interests were not at issue in the case.
¶ 31 In Mieka, the defendants argued that the commissioner, in adopting the findings of fact and conclusions of law by the Colorado Division of Securities panel that had presided over the administrative hearing, erred when he expressly rejected the presumption. Mieka, ¶ 21. However, Mieka concluded the commissioner's refusal to apply the presumption was immaterial because the panel had not applied the presumption, the commissioner "adopted the [p]anel's conclusion that the Joint Venture interests were securities, and the [p]anel explained that its conclusion would have been the same if the presumption had applied." Id. at ¶¶ 22, 25. Accordingly, the issue of whether the presumption applies in Colorado was "not ripe for judicial resolution." Id. at ¶ 25.
¶ 32 It is therefore a matter of first impression in Colorado whether to apply the strong presumption that interests in joint ventures or general partnerships are not securities.
2. Other Courts
¶ 33 A number of opinions by federal and state courts have recognized, and some have adopted, the strong presumption that joint venture or general partnership interests are not securities. See Kenneth L. MacRitchie, General Partnerships and Similar Interests as "Securities" Under Federal and State Law, 32 Lincoln. L. Rev. 29, 37-66 (2004-2005) (collecting cases from federal and state courts); J. William Callison, Changed Circumstances: Eliminating the Williamson Presumption that General Partnership Interests are Not Securities, 58 Bus. Law. 1373, 1376-79 (Aug.2003) (collecting cases from federal circuit courts).
¶ 34 Some United States courts of appeals have adopted the presumption along with Williamson 's three-factor test. E.g.,Sec. & Exch. Comm'n v. Shields, 744 F.3d 633, 643-44 (10th Cir.2014) ; Sec. & Exch. Comm'n v. Merch. Capital, LLC, 483 F.3d 747, 754 (11th Cir.2007) ; Youmans, 791 F.2d at 346 ;
*859 Odom v. Slavik, 703 F.2d 212, 215 (6th Cir.1983). Others have adopted the Williamson three-factor test and related analysis without recognizing or relying on the presumption. E.g., Koch v. Hankins, 928 F.2d 1471, 1477-78 (9th Cir. 1991). Still others do not rely on Williamson and, instead, have created their own rules for determining when, if ever, a general partnership interest constitutes an investment contract. E.g., Klaers v. St. Peter, 942 F.2d 535 (8th Cir.1991) (addressing whether partnership interests are securities without adopting or rejecting any part of Williamson ); Goodwin v. Elkins & Co., 730 F.2d 99, 105-08 (3d Cir.1984) (rejecting Williamson and categorically holding "that a participant who holds a general partnership interest in an enterprise ... does not possess a security within the meaning of federal securities law").
¶ 35 And at least one circuit, the Fourth, has inconsistently applied Williamson, initially adopting the presumption but not the entire three-factor test, Rivanna Trawlers Unltd. v. Thompson Trawlers, Inc., 840 F.2d 236, 240-41 (4th Cir.1988) (Powell, Associate Justice, sitting by designation), and then later applying the three-factor test but not explicitly relying on the presumption, Bailey v. J.W.K. Props., Inc., 904 F.2d 918 (4th Cir.1990).
C. The Nature of Presumptions
¶ 36 "Presumptions are rules of convenience, based on experience or public policy, so certain in their character that when they are established by the presentation of certain underlying facts the effect is to create a prima facie case upon which judgment may be rendered in the absence of contrary evidence." Schenck v. Minolta Office Sys., Inc., 802 P.2d 1131, 1133 (Colo.App.1990). A rebuttable presumption is a type of presumption that shifts the burden of going forward with evidence but not the ultimate burden of proof. Krueger v. Ary, 205 P.3d 1150, 1154 (Colo.2009).[4]
¶ 37 In Colorado, in "all civil actions and proceedings not otherwise [specifically] provided for by statute or by [the Colorado Rules of Evidence]," presumptions are of this type:
a presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.
CRE 301.
¶ 38 CRE 301 does not explain in any given setting what factual showing must be made to overcome the presumption. Rather, "[t]he strength of a rebuttable presumption, absent case law or statutory prescription to the contrary, must be measured on a case by case basis in way of determining whether the weight of evidence contrary to the presumption has overcome it." Schenck, 802 P.2d at 1133. CRE 301 also does not resolve the question of what happens when the opponent presents evidence rebutting the presumption: does the presumption disappear or does it remain in the case as some evidence of the presumed fact? Sheila Hyatt, Colorado Practice Series: Colorado Evidence Law 23 COPRAC § 301:2 (2013) (citing CJI-Civ. 4th 3:5 (2014)). Accordingly, "[t]he status and strength of a rebuttable presumption varies according to the strength of the policies which motivate a court or a legislature to create it." Cline v. City of Boulder, 35 Colo.App. 349, 353, 532 P.2d 770, 772 (1975).
¶ 39 Used improperly, presumptions defeat their basic purpose of simplifying the determination of certain legal issues. When a presumption does not advance its basic purpose, it is less than useless because it generates satellite litigation over the meaning and application of the presumption, instead *860 of aiding the parties and the court in deciding the substantive issue before the court.
D. The Strong Presumption Should Not Apply in Colorado
¶ 40 For many reasons, we conclude that Colorado courts should not apply the strong presumption that a joint venture or general partnership interest is not a security.
¶ 41 First, applying a presumption that an interest in a business organization is not a security based solely on the putative form of organization is contrary to Colorado and federal law that requires courts to look at substantive economic realities, not form. See, e.g., United Hous. Found. Inc. v. Forman, 421 U.S. 837, 848, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) ; Griffin, 759 P.2d at 842.
¶ 42 Second, no court has articulated the presumption in a manner that enables trial courts to reliably apply, and appellate courts to review the application of, the presumption. For instance, we do not know what strength the presumption has, or, put another way, what amount and weight of contrary evidence are necessary to overcome it. Courts that have applied the presumption have used different terms to describe its strength (for example, the presumption has been described as constituting a "difficult burden to overcome" in cases using the language of Williamson, 645 F.2d at 424, or "a substantial burden of proof," Odom, 703 F.2d at 215 ), but no court has defined those terms. We also do not know whether the presumption evaporates upon the presentation of sufficient evidence to support a finding that the general partnership or joint venture interest could be a security, or whether the presumption remains in the case in some form.
¶ 43 To illustrate, despite both of the comprehensive written orders by the trial court in this case, we cannot discern what weight the trial court gave to the presumption. For instance, in the summary judgment order, the court concluded that "[q]uite apart from collateral estoppel, ... as a matter of law there is nothing in the four corners of the [JVAs] that ... even come[s] close to overcoming the strong Williamson presumption." And in its findings of fact and conclusions of law, the court concluded that, after weighing the factors relevant to the economic realities underlying the transaction "against the strong presumption that joint venture interests are not securities ..., [the commissioner] has simply failed to carry [his] heavy burden of establishing that the ... interests are securities."
¶ 44 From these statements, we cannot determine how or in what manner, if at all, the presumption affected the findings of fact or conclusions of law made by the trial court, nor can we determine whether the court's decision would have been different if it had not applied the presumption. We also do not know how we, as an appellate court, should apply the presumption in reviewing the court's findings of fact and conclusions of law.
¶ 45 Third, the resolution of what weight a presumption has and whether it disappears upon presentation of sufficient rebuttal evidence depends on policy judgments that, in this context, we are ill-suited to make, and, if they are to be made, should be left to the General Assembly. See City of Pittsburgh v. Workers' Comp. Appeal Bd., 620 Pa. 345, 67 A.3d 1194, 1205 (2013) ("Adoption of a presumption to govern [a] factual paradigm is largely a question of policy" which "would require empirical support. The judicial branch, faced with discrete factual patterns in individually-contested cases, is not particularly suited to make such empirical judgments to govern an entire set of cases.").
¶ 46 It is one thing for a court to create presumptions in an area of the law that is governed by common law decisions of the courts; for example, much of the law of torts is based upon common law principles. There, it is entirely appropriate for courts to establish presumptions, such as the doctrine of res ipsa loquitur. See Manzi v. Montgomery Elevator Co., 865 P.2d 902, 904 (Colo.App.1993) ("Res ipsa loquitur is a rule of evidence which defines circumstances under which a presumption of negligence will arise as a matter of law."). It is entirely different when, as here, the area of the law is regulated extensively by statute and the presumption is not necessary to fill a gap in the *861 statutory scheme. See City of Pittsburgh, 67 A.3d at 1205 n.12. Here, the accommodation by presumption or otherwise of competing interests of constituent groups-those the General Assembly has deemed in need of the protection of the securities laws on the one hand, and certain business organizers on the other hand-is a matter for the legislature, not the courts.
¶ 47 Fourth, and more fundamentally, we do not understand why the presumption is necessary at all. A general partnership interest is not a security unless the government, in an enforcement action, or a plaintiff in a private action under the securities acts, proves that it is a security. Without regard to the presumption, the burden of production and persuasion in establishing that such an interest is a security is assigned to the party claiming that it is. The presumption is thus wholly unnecessary to assign that burden of proof and persuasion to that party.
¶ 48 For these reasons, imagining what useful work the presumption accomplishes-unless it increases the burden of proof-is, at best, difficult.[5] But the parties in this case and the trial court eschewed any argument that the presumption elevated the burden of proof from a preponderance of the evidence standard to, say, a clear and convincing standard. And, in any event, the presumption could not increase the burden of proof because the legislature has provided that "[a]ny provision of the law to the contrary notwithstanding ..., the burden of proof in any civil action shall be by a preponderance of the evidence." § 13-25-127, C.R.S.2014.
¶ 49 For all of these reasons, we conclude that the strong presumption that a general partnership interest is not a security does not serve any valid purpose in adjudicating disputes such as this one, and we therefore reject it. We do so mindful of the General Assembly's declaration that "[t]he provisions of [the Act] ... shall be coordinated with the federal acts and statutes to which references are made in this article ... to the extent coordination is consistent with both the purposes and the provisions of this article." § 11-51101, C.R.S. 2014; see also Cagle v. Mathers Family Trust, 2013 CO 7, ¶¶ 17, 19-20, 295 P.3d 460. As noted above, some (but by no means all) federal courts have recognized and adopted the presumption. But when, as here, we cannot discern what the strong presumption means or why it should be applied, either in the trial court or on appeal, we do not read the statute as requiring us to mindlessly apply such a rule.
E. The Trial Court Applied the Strong Presumption
¶ 50 Because the trial court applied the strong presumption, we vacate the trial court's judgment and remand for reconsideration without the baggage of the strong presumption. Because the court applied the presumption in concluding that the joint venture interests are not securities under the third Williamson factor (in its summary judgment order) or the second Williamson factor or any other "catch-all economic realities" (in its findings of fact and conclusions of law), on remand, the court must redetermine whether the interests are securities under the second and third Williamson factors and any other economic realities.
¶ 51 Although the trial court also applied the presumption in concluding that the interests are not securities under the first Williamson factor, the court's collateral estoppel determination (in its summary judgment order) formed an independent basis for that conclusion. The commissioner does not argue on appeal that the collateral estoppel determination was erroneous. Thus, the remand does not encompass a redetermination of the first Williamson factor.
IV. The Relevant Experience of the Partners
¶ 52 In analyzing the second Williamson factor-whether "the partner or venturer is so inexperienced and unknowledgeable in *862 business affairs that he is incapable of intelligently exercising his partnership or venture powers," Williamson, 645 F.2d at 424 -the trial court stated that "the overwhelming federal authority addressing" this factor "holds that a partner in a general partnership must have experience and knowledge in business affairs generally, and a partner is not required to have industry specific knowledge in order to preclude a finding that a joint venture interest is a security." (Emphasis in original.)
¶ 53 The court thus concluded that because Cagle, ¶ 17, requires the Act to be coordinated with federal securities law, the appropriate standard in applying the experience and knowledge requirement in the second Williamson factor is whether the partners have general business experience, not experience in the business of the venture. The court found that, "as a whole," the venturers were "unquestionably knowledgeable and experienced in business affairs" and thus capable "of intelligently exercising their partnership powers." Based on that finding, the court concluded that the commissioner had failed to establish that the joint venture interests are securities under the second Williamson factor.
¶ 54 For several reasons, we reject the trial court's legal determination that the second Williamson factor addresses the general business experience of the partners.
¶ 55 First, it is far from clear that the "the overwhelming federal authority" prescribes inquiring into the general business experience of the partners, not their industry-specific experience. Apart from the Fourth and Ninth Circuits, which decided the cases the trial court relied on,[6] our research discloses that the other federal circuits that have considered the issue, including the Tenth Circuit (in a case decided after the trial in this case), have concluded that "[t]he experience and knowledge referred to in Williamson focus[es] on the experience of investors in the particular business, not the general business experience of the partners." Shields, 744 F.3d at 647 (internal quotation marks omitted); see also United States v. Leonard, 529 F.3d 83, 90-91 (2d Cir.2008) ; Merch. Capital, 483 F.3d at 762.
¶ 56 Even the Fifth Circuit, which decided Williamson, takes the view that Williamson "made clear that the knowledge inquiry must be tied to the nature of the underlying venture" and that "any holding to the contrary would be inconsistent with Howey itself." Long, 881 F.2d at 134 n.3 ; see also id. at 135 (citing Howey, 328 U.S. at 296, 299-300, 66 S.Ct. 1100 ).
¶ 57 Second, we agree with those federal courts that hold that only an inquiry concerning the partners' venture-specific experience is faithful to Howey because "[r]egardless of investors' general business experience, where they are inexperienced in the particular business, they are likely to be relying solely on the efforts of the promoters to obtain their profits." Merch. Capital, 483 F.3d at 762. This approach is also consistent with the statement by this court in Digital Interactive Assocs. that "investors [were] solicited without regard to whether they had any expertise, or prior interest in, the business of the partnership." 987 P.2d at 883.
¶ 58 However, the requirement that investors have experience in the business of the venture does not mean that every partner need be an expert in every aspect of the business. Many legitimate general partnerships are comprised of partners with different talents and expertise in different areas that may be relevant to the particular venture.
*863 See Hooper v. Yoder, 737 P.2d 852, 854, 857 (Colo.1987) (describing a partnership in which one partner had experience in the industry of the partnership and contributed his knowledge of that industry and another partner had no industry experience but contributed his business acumen). But there must be substantial collective experience in the specific business of the venture such that the partners, as a whole, need not rely solely on the promoters or third parties for the success of the venture or to meaningfully exercise their partnership powers.
¶ 59 Because the trial court analyzed the general business experience of the venturers, not their collective experience in the business of the venture, on remand, the court must redetermine the second Williamson factor in relation to the venturers' industry-specific experience. The court must focus on the type of experience that would enable a venturer to make meaningful decisions on managing and operating the business of the venture-oil and gas exploration, drilling, and production.
V. Whether the Interests Are Securities as a Matter of Law
¶ 60 We reject the commissioner's invitation to decide, as a matter of law, that the joint venture interests are securities. The commissioner's argument conflates our role as an appellate court with that of the trial court. We do not find historical facts; for a number of very good reasons, that function is committed to the trial court. Because at least some of the facts that govern the determination of whether the interests are securities are disputed, it is necessary for us to remand for reconsideration in light of the legal rules we have prescribed here.
VI. Conclusion
¶ 61 The judgment is vacated and the case is remanded to the trial court for redetermination of whether the joint venture interests are securities under the second and third Williamson factors and any other "catch-all" economic realities, taking into consideration our rejection of the strong presumption that general partnership interests are not securities and our determination that the relevant measure of business experience is experience in the business of the venture. Although it appears that there is sufficient evidence in the record for the court to make these determinations without additional evidence, the court has discretion to permit the presentation of further evidence.
¶ 62 In making its factual findings and legal conclusions on remand, the court must apply the economic realities test and examine all relevant factors that show the substantive economic realities underlying the transaction, including but not limited to factors this court has discussed in prior opinions. See, e.g., Digital Interactive Assocs., 987 P.2d at 883 (listing considerations that affect the determination of whether a general partnership interest is a security). Consistent with Digital Interactive Assocs.,id., such factors include relevant pre-investment activity by defendants, such as how investors were solicited, because "the ultimate issue under Howey is whether the partners expected to rely solely on the efforts of others" and "[courts] look at the expectations ... at the time the interest is sold." Shields, 744 F.3d at 646 (internal quotation marks omitted). See also Sec. & Exch. Comm'n v. Mut. Benefits Corp., 408 F.3d 737, 743 (11th Cir.2005) ("Significant prepurchase managerial activities undertaken to insure the success of the investment may ... satisfy Howey ."); Koch, 928 F.2d at 1478 ; Gordon v. Terry, 684 F.2d 736, 742 (11th Cir.1982) (" Williamson requires an examination of the representations and promises made by the promoters or others to induce reliance upon their entrepreneurial abilities.").
JUDGE J. JONES and JUDGE MILLER concur.

For purposes of this opinion, there is no difference between a "general partnership" and "joint venture," and we use the terms interchangeably. Whether, under any circumstances, there may be a legal difference between the two is an issue we need not, and do not, decide here. See George E. Reeves, Partnership Status of Joint Ventures in Colorado, 24 Colo. Law. 2553, 2553-56 (Nov.1995) (discussing different views that Colorado joint ventures are partnerships, may be partnerships, or are not partnerships).

The Colorado Supreme Court now refers to collateral estoppel as "issue preclusion." Farmers High Line Canal & Reservoir Co. v. City of Golden, 975 P.2d 189, 196 n.11 (Colo.1999).

This determination was based on a 2002 cease-and-desist action brought against two defendants in this case by the Colorado Division of Securities, which claimed that an interest in one of the joint ventures at issue here was an unregistered security. A hearing panel of the Colorado Securities Board concluded that the Division did not meet its burden of proving that the interest was a security. Under his statutory authority, the commissioner affirmed the Board's determination and adopted this conclusion as the final administrative order. The trial court thus concluded that the argument that the joint venture interests are securities, based solely on the plain language of the JVAs, was litigated and finally resolved in that case and the commissioner was barred from making that argument in this case.

Other types of presumptions include a conclusive presumption, which many commentators and courts have noted is not a presumption at all but rather a substantive rule of law because if the fact giving rise to the presumption is proven, the party against whom the presumption operates may not dispute the existence of the fact contained in the presumption, which is thus deemed conclusively established. E.g., 2 McCormick on Evidence § 342 (Kenneth Broun et al. eds., 7th ed.2013).

It has been suggested that one possible benefit of the presumption is that it allows business organizers to be reasonably certain, at the inception of the business, whether they need to comply with the securities laws. However, as discussed above, the adoption of a mechanism to increase such certainty requires a policy judgment that is best left to the General Assembly, when, as here, the activity is heavily regulated by statute.

The Ninth Circuit has held that "the proper inquiry is whether the partners are inexperienced or unknowledgeable in business affairs generally." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir.1992) (internal quotation marks omitted). However, the Fourth Circuit appears to change the focus of its analysis from general business experience to specific industry experience, depending on the facts of the case and type of business organization involved. See Rivanna Trawlers Unltd. v. Thompson Trawlers, Inc., 840 F.2d 236, 242 n.10 (4th Cir.1988) (not requiring general business experience, much less experience in the specific industry); Bailey v. J.W.K. Props., Inc., 904 F.2d 918, 924 n.13 (4th Cir.1990) (stating that the inquiry into the investor's knowledge must be tied to the nature of the underlying venture); Robinson v. Glynn, 349 F.3d 166, 171-72 (4th Cir.2003) (not requiring specialized knowledge of the industry of the venture).