**Roger PFOHL, Plaintiff,**

v.

**PELICAN LANDING, etc., et al., Defendants.**

### No. 82 C 7790.

United States District Court, N.D. Illinois, E.D.

June 13, 1983.

Peter B. Carey, Joyce & Kubasiak, P.C., Chicago, Ill., for plaintiff.

William G. Swindal, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Roger Pfohl ("Pfohl") sues Pelican Landing, an Illinois general partnership ("Pelican") and four of its partners,[1] alleging violations of:

    1.  Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and corresponding SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (Count I);

    2.  Section 17(a) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77q(a) (Count II);[2] and

    3.  1933 Act §§ 12(1) and (2), 15 U.S.C. § 77l (Count III).[3]

Defendants have moved in the alternative (1) to dismiss this action for lack of subject matter jurisdiction or (2) to dismiss Count

---

1.  Pfohl's Complaint describes each of Roy C. Palmer ("Palmer"), Howard E. Sproat ("Sproat"), Jack L. Douglass ("Douglass") and Lawrence P. Avril ("Avril") as a "managing partner." They are sued as parties directly liable, as accessories and as "controlling persons" under Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o.

2.  Count II's prayer for relief (at ¶ 2) seeks damages. Whether Section 17(a) is enforceable by

private damage suits is an open question in this circuit. *Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Ins. Co.,* 698 F.2d 320, 323 (7th Cir.1983).

3.  Because the relevant sections of the 1933 and 1934 Acts do not share any numbers in common, this opinion will follow the practice (familiar to securities practitioners) of referring simply to "Section—" without identifying the Act involved.

III as time barred. For the reasons stated in this memorandum opinion and order:

    1. Defendants' motion to dismiss this action is denied.

    2. Their motion to dismiss Count III is granted only as to its Section 12(1) claim.[4]

## Background [5]

Pfohl alleges he is a financial lamb fleeced by the wily individual defendants. His self-description of his source of funds is that of a person much like a remittance man in (say) a Maugham short story—in all events, he is wholly unsophisticated as to investment real estate.

Douglass, a close personal friend of long standing, approached Pfohl in June or July 1979 and offered him an investment opportunity in Pelican, apparently organized to acquire and develop as a condominium project certain real estate located in Englewood, Florida. Douglass (1) represented Pelican as a limited partnership and (2) said acquisition of Pfohl's limited partnership interest would require his capital contribution of $50,000 plus his purchase of two finished condominium units at a cost of $45–50,000 each. Douglass assured Pfohl those units would be worth substantially more on resale, inviting Pfohl to anticipate turning a nice profit. Relying on Douglass' representations and what he knew or was told about Palmer's and Sproat's development savvy, Pfohl invested $175,000 in the project, $50,000 cash plus what turned out to be $62,500 for each of the two condominium units.

Pelican evidently had difficulty getting off the ground in Florida, and Pfohl now alleges defendants made various misrepresentations and failed to state various material facts about the project. Most importantly Pfohl learned, only within a year of filing his Complaint, defendants had made untrue statements in (1) describing his interest as that of a limited partner, (2) esti-

mating the cost of his condominium units as between $45–50,000 and (3) assuring his units could be sold for two or three times their cost to him. Defendants also generally failed to state (1) the risky and speculative nature of his investments and (2) their true intentions as to certain securities filings and other regulatory requirements.

Pfohl alleges he was never shown and did not sign the Pelican general partnership agreement (the "Agreement"). Defendants assert Pfohl did sign the Agreement.

## Subject Matter Jurisdiction

Defendants contend (Mem. 4–8; R.Mem. 2–11) this Court lacks subject matter jurisdiction over this action because Pfohl's general partnership interest in Pelican is not a "security" as defined in 1933 Act § 2(1), 15 U.S.C. § 77b(1) or 1934 Act § 3(a)(10), 15 U.S.C. § 78c(a)(10). More particularly defendants argue Pfohl's interest does not constitute an "investment contract" under Sections 2(1) and 3(a)(10) as defined by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946):

> In other words, an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

Essentially defendants claim (1) Pfohl had a right to participate in Pelican's management equal to the right of each other general partner and therefore (2) he did not expect to realize profits "solely" from the efforts of third parties.

---

**4.** Pfohl has conceded the Section 12(1) claim is time barred. Ans.Mem. 17.

**5.** This account is drawn principally from the Complaint, supplemented by information from the parties' supporting memoranda and affida-

vits. Where the Complaint is the source used, this statement generally eschews "Pfohl alleges" and like language, instead stating the allegations as facts. However, no *findings* of fact are intended or made.

Pfohl relies principally (Ans.Mem. 12–15) on the concept articulated in *Williamson v. Tucker,* 645 F.2d 404, 424 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), that a general partnership interest can sometimes be a "security":

> A general partnership or joint venture interest can be designated a security if the investor can establish, for example, that (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Williamson*'s teaching has been followed by this Court's colleague Judge Marshall in *Morrison v. Pelican Land Development,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,863 (N.D.Ill. Aug. 20, 1982).[6] And our Court of Appeals has cited *Williamson* favorably in a related connection. *Kim v. Cochenour,* 687 F.2d 210, 213 n. 7 (7th Cir.1982).

But *Williamson*'s principle alone does not dispose of defendants' jurisdictional motion on the present record. Defendants' Fed.R. Civ.P. ("Rule") 12(b)(1) motion challenges this Court's actual subject matter jurisdiction, not merely the sufficiency of the Complaint's allegations. Accordingly this Court would be entitled to resolve contested factual issues relevant to establishing its jurisdiction. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1350, at 549–50, 555–58 (1969); *Williamson,* 645 F.2d at 412–15. For several reasons, however, this Court is not prepared to determine the matter under *Williamson*'s tests: Pfohl's actual power in the partnership, the level of his business acumen and his need to depend on the individual defendants.

Pfohl's April 19, 1983 Affidavit ("Apr. 19 Aff.") ¶¶ 2, 5, 10–11 and 13–14 make the assertions dictated by a plaintiff's reliance on *Williamson.* But those assertions are so bound up with the merits of Pfohl's case that a definitive ruling finding them true would nearly amount to rendering judgment for Pfohl—clearly premature in the context of a Rule 12(b)(1) motion on the present record.[7] *See* 5 Wright & Miller § 1350, at 559. For one thing, Pfohl's allegations are largely conclusory, and he has not adequately detailed the underlying facts. For another, Palmer's February 4, 1983 supporting Affidavit ("Palmer Aff.") rests on the terms of the Agreement and does not speak to the matters Pfohl does detail. This Court has thus been left without focused opposing contentions of the parties, and the factual issues will clearly be better developed—and more amenable to resolution—by discovery and the opportunity for examination of witnesses.

It might be objected Pfohl has therefore not met *his* burden of showing jurisdiction in opposition to defendants' motion. *See* 5 Wright & Miller § 1350, at 555–56. But Pfohl has another string to his bow, one that does not require satisfaction of *Williamson*'s detailed tests for determining when an admitted general partnership in-

6. As the case name indicates, the identical real estate venture was involved in Judge Marshall's case. Defendants' same counsel defended that case too, unsuccessfully advancing the same argument found wanting here. Yet it was left to Pfohl's counsel to apprise this Court of *Morrison*'s existence. See n. 11 of this opinion.

7. *Williamson* itself simply reversed a dismissal for lack of subject matter jurisdiction, 645 F.2d at 425–26, 429, apparently remanding to the district court for further factual findings. Similarly *Morrison* [1982 Transfer Binder] Fed.Sec. L.Rep. at 94,481 only denied defendants' summary judgment motion because the parties' affidavits left material issues of fact relevant to the *Williamson* jurisdictional issue. Rule 12(b)(1) presents a different conceptual (and procedural) framework.

terest may nevertheless constitute a "security."

Pfohl alleges (Complaint Count I ¶¶ 12–13) Douglass represented Pelican was a limited partnership. Pfohl also asserts he was not provided a copy of the Agreement (Apr. 19 Aff. ¶ 9) and denies that he ever signed it (*id.;* Pfohl May 20, 1983 Affidavit ["May 20 Aff."] ¶ 6). Those claims raise an issue not present in *Morrison, see* [1982 Transfer Binder] Fed.Sec.L.Rep. at 94,480 n. 1. And given those claims, this Court need not now reach the question whether Pfohl's general partnership interest is a security.

▇ Under 1934 Act § 3(a)(13), 15 U.S.C. § 78c(a)(13), the term "sale" includes "any contract to sell," and 1933 Act §§ 17(a), 12(1) and 12(2) likewise target fraudulent activities in the *offer or sale* of securities. Thus both Acts extend to persons who offer to sell what they *describe* as securities,[8] because the Acts reach fraud in the offer itself. Pfohl's allegations consequently set out federal securities law claims whatever may be found as to the true character of his interest in Pelican.

Defendants attempt to deny Pfohl that route by asserting he signed the Agreement (implying Pfohl knew exactly what he bought). Mem. 3; Palmer Aff. ¶ 4; R.Mem. 5. But the Agreement as sub-

mitted by defendants does not include Pfohl's signature! Palmer Aff.Ex. A.[9]

Defendants further attempt to undermine Pfohl's claim of ignorance by attaching to their R.Mem. a copy of a September 18, 1980 Guaranty, signed by Pfohl and witnessed by his present counsel.[10] That Guaranty clearly obligates Pfohl as a general partner, and defendants thus suggest Pfohl knew (at least then) exactly what his interest was. But the Guaranty obligates Pfohl as a general partner of "Pelican Landing, a *Florida* general partnership," not of Pelican itself (an Illinois partnership, it will be recalled). Pfohl explains (May 20 Aff. ¶¶ 3–4) he signed the Guaranty after it was represented to him the Florida partnership and a related corporation had been created only to take legal title to the real estate developed by Pelican. *See also* Supp. Ans.Mem. 3–4. Thus Pfohl denies the Guaranty is relevant to the questions of what he was told or what he knew about his Pelican interest, and he denies outright having signed the Agreement. May 20 Aff. ¶ 6.

▇ This Court will not now enter a conclusive finding Pfohl was not shown and did not sign the Agreement. But defendants' failure to produce Pfohl's signature on a document they evidently control leaves Pfohl's allegation unscathed.[11] At least at

---

**8.** Defendants do not of course contest the status of a *limited* partnership interest as a "security" under the 1933 and 1934 Acts.

**9.** As that Exhibit reflects, the Agreement was a 19-page document followed by a listing of the owners of the 19 equal partnership interests (two persons, the *Morrison* plaintiff and another individual, shared one such interest) and then multiple counterparts of page 20 (the signature page). Palmer's Aff. ¶¶ 3, 4 say:

> Included in Exhibit A are true and exact copies of the signature pages executed by each of the partners in PELICAN.
> &ast;   &ast;   &ast;   &ast;   &ast;   &ast;
> Mr. Pfohl executed the Pelican Partnership Agreement and his signature is attached to Exhibit A.

Despite those flat-out statements, the 17 counterparts of page 20 included in Exhibit A reflect signatures of all the listed partners *except* Pfohl. Only Pfohl is inexplicably absent.

**10.** Even though they may have been focusing on a wholly different issue, Pfohl's counsel may

have avoided any collision with ABA Code of Professional Responsibility ("Code") DR 5–102(A). May 20 Aff. ¶ 4 says Pfohl's lawyers signed the Guaranty "*only* in the capacity of witnesses" and did not give Pfohl "legal advice." Those statements would seem to avoid any call for the lawyers' testimony as to what Pfohl knew and when.

**11.** Defendants' counsel appear to have their own difficulties with full disclosure (the litigation version of Rule 10b–5):

> 1. Initially their Mem. 3 said flatly "All of the partners, including the plaintiff, executed the ... Agreement ...." Although Pfohl's signature was plainly absent from the Agreement attached to the Palmer Affidavit, there was not a hint of that from counsel, who apparently left that for Pfohl's counsel to mention or for this Court to uncover on its own. Then, even after Pfohl's responsive memorandum highlighted the issue of whether Pfohl ever signed the Agreement, defend-

this stage of these proceedings Pfohl has met his burden of proof sufficiently to withstand defendants' motion to dismiss. Pfohl has made out at least a prima facie case he was sold his Pelican interest without his having seen or executed the Agreement—sufficiently undergirding his allegation he was fraudulently offered a limited partnership interest.[12]

### Statute of Limitations

 Actions under Section 12(2) must be brought "within one year after discovery of the untrue statement or the omission" but "[i]n no event ... more than three years after the sale." 1933 Act § 13, 15 U.S.C. § 77m. Pfohl's Complaint Count III ¶ 29 makes the requisite allegation of discovery within a year of filing the action. And given the pro-Pfohl assumptions on defendants' Rule 12(b)(6) motion as to Count III— see *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977)—that is enough to withstand defendants' motion as far as the one-year limit is implicated.

But did Pfohl file his action within "three years after the sale"? Defendants say no (Mem. 8; R.Mem. 11–12) because Pfohl filed this action December 22, 1982, having made his capital contribution in August 1979. Palmer Aff. ¶ 6. But Palmer admits (*id.* at ¶ 7) Pfohl purchased his two condominium units in June and August 1981, and

Pfohl alleges those purchases were *required* in the deal. Complaint Count I ¶ 15.

 Those facts pose the question (unanswered at this threshold stage) whether the "sale" took place in 1979, but with some payments on the purchase price two years later, or whether each component transaction was part of an ongoing "sale." In the latter event Pfohl may be able to prove "the sale" of his interest was not completed until August 1981. *See Morrison,* [1982 Transfer Binder] Fed.Sec.L.Rep. at 94,481 (discussing date of sale's completion in Section 12(1) context). Again that is enough to withstand defendants' Rule 12(b)(6) motion as to Section 13's three-year limitations period.

### Conclusion

Defendants' motion to dismiss for lack of subject matter jurisdiction is denied. Pfohl's Section 12(1) claim in Count III is dismissed, but his Section 12(2) claim remains intact. Defendants are ordered to answer the Complaint on or before June 23, 1983.

---

ants' R.Mem. 5 simply says Pfohl "does not deny ... executing the AGREEMENT." There is total silence about the signature being missing from a document complete in every other respect.

2. Their argument about the Guaranty is materially misleading, for it blurs the critical distinction between Pelican and the specially-created Florida partnership assigned the same name.

3. Their contention Pfohl "has admitted that he is a general partner in a general partnership" (R.Mem. 5; see also Mem. 2) is a misleading characterization of Complaint Count I ¶ 19a. Unlike the two prior items, however, that characterization may perhaps be labeled as advocacy.

4. They did not apprise this Court of Judge Marshall's ruling in *Morrison.* Because the two courts are at the same level (so that Judge Marshall's opinion is not "controlling" authority) it is open to discussion

whether counsel's omission infringed Code EC 7–23:

Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so; but, having made such disclosure, he may challenge its soundness in whole or in part.

But better practice would clearly have been to call the case to this Court's attention (it *was* the same counsel's own case in the same District Court and involving the same partnership).

12. Of course, if future discovery were to indicate otherwise defendants could renew their jurisdictional motion, or this Court might address the jurisdictional issue sua sponte. Rule 12(h)(3). That possibility would revive the need to address the *Williamson* standards.