2022 CO 36 Tung Chan, Securities Commissioner for the State of Colorado, Petitioner v. HEI Resources, Inc. f/k/a Heartland Energy, Inc.; Charles Reed Cagle; Brandon Davis; Heartland Energy Development Corporation; John Schiffner; and James Respondents No. 20SC595
Supreme Court of Colorado, En Banc
June 27, 2022

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 18CA1769

 Attorneys for Petitioner: Philip J. Weiser, Attorney General
Robert W. Finke, First Assistant Attorney General Jodanna L.
 Haskins, Senior Assistant Attorney General Janna K. Fischer,
 Assistant Attorney General Denver, Colorado

 Attorneys for Respondents Heartland Energy Development
 Corporation and Brandon Davis: Munck Wilson Mandala LLP Shain
 A. Khoshbin S. Wallace Dunwoody Chase A. Cobern Dallas, Texas
 Holland & Hart, LLP Marcy G. Glenn Denver, Colorado

 Attorneys for Respondents HEI Resources, Inc. and Charles
 Reed Cagle: Thomas Law LLC Jeffrey R. Thomas Denver, Colorado

 Attorneys for Respondents John Schiffner and James Pollak:
 Otto Law Otto K. Hilbert, II Denver, Colorado

 Attorneys for Amicus Curiae National Federation of
 Independent Business: Robinson Waters & O'Dorisio,
 P.C. Tracy L. Ashmore Denver, Colorado

 Attorneys for Amicus Curiae North American Securities
 Administrators Association, Inc.: North American Securities
 Administrators Association, Inc. Kameron Hillstrom
 Washington, District of Columbia Ballard Spahr LLP Theodore
 J. Hartl Denver, Colorado

 OPINION

 HART
 JUSTICE

 ¶1
This case requires us to determine how courts should evaluate
 whether an interest in a "general partnership" is
 an "investment contract" under Colorado's
 securities laws and thus a "security" subject to
 the laws and regulations of the Colorado Securities Act,
 §§ 11-51-101 to -1008, C.R.S. (2021) (the
 "CSA"). An investment contract is undefined in the
 statute, but Colorado has long followed federal law in
 applying the test set forth in Securities & Exchange
 Commission v. W.J. Howey Co., 328 U.S. 293, 298-99
(1946), which provides that an investment contract must be
 (1) a contract, transaction, or scheme whereby a person
 invests money (2) in a common enterprise (3) in which the
 person is led to expect profits derived from the
 entrepreneurial or managerial efforts of others. General
 partnerships ordinarily do not satisfy the third element of
 Howey because general partners control and direct
 the venture. But in some instances, an investor or-as here-a
 security regulator claims that a contract or scheme that
 purports to be a general partnership in form is
 actually an investment contract in operation. In
 those instances, the majority of state and federal courts
 have turned to the opinion of the United States Court of
 Appeals for the Fifth Circuit in Williamson v.
 Tucker, 645 F.2d 404 (5th Cir. 1981), for guidance on
 how to assess whether the form of the venture is somehow
 belied by the economic realities of its operation.

 ¶2
We conclude here that the Williamson framework
 applies in Colorado. That, however, does not fully answer the
 questions we are presented with in this dispute, as
 Williamson has been interpreted in various ways. As
 relevant here, some courts, including the division below,
 have suggested that ventures denominated as general
 partnerships are entitled to a "strong presumption"
 that they are not investment contracts. See Chan
 v. HEI Res., Inc., 2020 COA 87, ¶¶ 32-33, 490
 P.3d 789, 799-800 ("HEI II"). We reject
 the notion that general partnerships are entitled to any
 presumption that might imply that a plaintiff bears a burden
 of proof greater than the preponderance of the evidence
 burden generally applicable in civil litigation. That said,
 we acknowledge, as Williamson did, that a plaintiff
 will have a "difficult factual burden" to carry
 when seeking to establish by a preponderance of the evidence
 that a venture holding the legal status of a general
 partnership is not in operation a general partnership. 645
 F.2d at 416.

 ¶3
 Beyond the question of how to describe the weight of the
 burden borne by plaintiffs in disputes like this one, the
 parties here further disagree over exactly how to apply the
 Williamson framework. In remanding this case for
 proceedings consistent with this opinion, we focus on three
 aspects of that application. First, a court evaluating
 whether general partners lack the ability to direct the
 venture may find that their general business knowledge and
 expertise is in fact sufficient

 to permit them to exercise their partnership powers. While
 industry-specific experience may be relevant, if the general
 partners lack such experience, that fact alone does not make
 the partnership an investment contract. Second, if general
 partners themselves would not be able to serve in the place
 of the manager, that does not necessarily make the
 partnership an investment contract; rather, a plaintiff must
 prove that the general partners cannot realistically replace
 the manager at all. Third, we conclude that a
 particular venture's "economic realities" can
 appropriately be considered as part of the
 Williamson framework.

 ¶4
 As we describe in detail below, whether respondents have sold
 securities has been in dispute for over a decade. Today, we
 do not resolve that factual dispute. The question before us
 is not whether these particular interests are
 securities. Rather, the question is a broader one: How should
 a court assess a plaintiff's claim that a particular
 "general partnership"-which, as everyone appears to
 agree, in its bona fide form would not be a security-is in
 fact operating as an investment contract and thus is a
 security under the CSA?

 I.
Relevant Facts and Procedural History

 ¶5
 Between approximately 2004 and 2008, respondents HEI
 Resources, Inc. ("HEI"), and the Heartland
 Development Corporation ("HEDC"), both corporations
 whose principal place of business is Colorado, formed,
 capitalized, and operated eight separate joint ventures
 related to the exploration and drilling

 of oil and gas wells.[1] They solicited investors for what they
 called Los Ojuelos Joint Ventures by cold calling thousands
 of individuals from all over the country. To those
 individuals who expressed interest in the ventures,
 respondents mailed promotional material and a confidential
 information memorandum, which described features of the
 ventures and disclosed certain risks. Those who joined the
 ventures became parties to an agreement organized as a
 general partnership under the Texas Revised Partnership
 Act.[2]
 Each of the eight ventures ultimately included between
 forty-six and ninety investors. These investors each signed a
 joint venture agreement that explained that the investors are
 "general partners" with a variety of rights and
 responsibilities but delegated the day-to-day management
 duties for the ventures to HEDC. HEI and HEDC did not
 register the ventures as securities, nor did they file a
 notice of exemption from registration. See §
 11-51-301, C.R.S. (2021).

 ¶6
 In 2009, the Securities Commissioner for the State of
 Colorado ("the Commissioner") initiated this
 enforcement action. The Commissioner's complaint alleged
 that respondents had violated the CSA by, among other things,
 offering and selling unregistered securities to investors
 nationwide through the use of unlicensed sales
 representatives and in the guise of general partnerships. The
 Commissioner alleged that HEDC and HEI used the general
 partnership form deliberately in order to avoid regulation.
Each of the Commissioner's claims required that the
 Commissioner prove that the general partnerships were
 securities, so the trial was bifurcated to permit resolution
 of that threshold question.

 ¶7
 In 2010, the Commissioner moved for partial summary judgment,
 arguing that an application of the framework set out in
 Williamson, as well as consideration of other
 economic realities of the general partnerships, demonstrates
 that the ventures were in fact investment contracts.
Respondents filed cross-motions, asking the trial court to
 conclude precisely the opposite-that, under the
 Williamson framework, the ventures were in fact
 operating as general partnerships and therefore were not
 investment contracts.

 ¶8
The trial court granted partial summary judgment in
 respondents' favor. First, the trial court agreed with
 respondents that under Williamson the general
 partnerships are presumed not to be securities. In reaching
 this conclusion, the

 court referred to Williamson as creating a
 "strong presumption" that interests in general
 partnerships are not securities.

 ¶9
 Second, the trial court ruled that the Commissioner's
 claims with respect to two of the Williamson
 tests[3] failed as a matter of law. The court
 described the first test as requiring that, in the
 partnership agreements, the relationship among the parties is
 tantamount to a limited partnership rather than a general
 partnership-that is, the agreements themselves "restrict
 the non-managing venturers' rights as to make the titular
 general partnership really a limited partnership." And
 it found that the agreements at issue here do not include
 such restrictions.

 ¶10
The court described the third Williamson test as
 requiring that the non- managing partners are so dependent on
 some unique ability of the manager that they cannot
 realistically replace the manager. This, too, the trial court
 concluded the Commissioner had failed to show.

 ¶11
 Remaining in contention were the second test, which requires
 that the partners be incapable of intelligently exercising
 their partnership powers because of a lack of experience and
 knowledge, and whatever other economic realities of the
 ventures might be relevant.

 ¶12
The case proceeded to a bench trial in July 2013 to determine
 whether the ventures were securities. The trial court
 determined that the second Williamson test requires
 asking "whether the partners are so inexperienced or
 unknowledgeable in business affairs generally, not
 whether they are experienced and sophisticated in the
 particular industry or area in which the partnership engages
 and they have invested," that they were "incapable
 of intelligently exercising their partnership powers."
The court looked to the investors as a whole and found that
 they were not so inexperienced or unknowledgeable in business
 affairs that they were unable to exercise their partnership
 powers intelligently. The trial court then looked to various
 "catch-all economic realities" as alternative bases
 for assessing whether the interests could qualify as
 investment contracts, but there, too, the court found that
 the Commissioner failed to prove by a

 preponderance of the evidence that the interests were
 securities. Accordingly, the court concluded that the
 interests were not investment contracts and entered judgment
 vacating the setting of the remainder of the bifurcated
 trial.

 ¶13
 The Commissioner appealed, arguing that the trial court erred
 (1) when it applied a "strong presumption" that
 general partnership interests are not securities, and (2)
 when it failed to narrow the focus from investors'
 general relevant business experience and knowledge
 to industry-specific experience and knowledge. A
 division of the court of appeals reversed. Rome v. HEI
 Res., Inc., 2014 COA 160, ¶ 61, 411 P.3d 851, 863
("HEI I"). The division rejected the
 strong presumption, id. at ¶ 41, 411 P.3d at
 860, concluded that the second Williamson test looks
 to investors' collective experience in "the specific
 business of the venture," id. at ¶ 58, 411
 P.3d at 863, and then remanded for reconsideration of
 "the second and third Williamson [tests] and
 any other 'catch-all' economic realities,"
id. at ¶ 61, 411 P.3d at 863.

 ¶14
 On remand in 2016, looking to the same record from the 2013
 trial, the trial court ruled that the ventures were
 securities. Specifically, the trial court found that the
 Commissioner (1) met the second Williamson test by
 showing that the partners collectively lacked experience with
 drilling and oil and gas exploration and thus were incapable
 of intelligently exercising their partnership powers; (2) met
 the third Williamson test by showing that no general
 partner could have

 capably replaced the managing partner, and thus the general
 partners were dependent on HEI and HEDC's unique
 managerial skills; and (3) showed that the ventures'
 other economic realities-demonstrated by a range of
 facts-supported a conclusion that the interests were
 securities. The case proceeded to a bench trial, and the
 trial court found that respondents had violated provisions of
 the CSA.

 ¶15
 This time around, respondents appealed. A division of the
 court of appeals ruled on only the threshold issue-whether
 the interests were securities-and issued a limited remand.
HEI II, ¶ 61, 490 P.3d at 804. Disagreeing with
 HEI I, this division reversed the trial court and
 remanded with instructions to "make factual findings as
 to whether the interests are investment contracts under the
 second and third Williamson tests, applying the
 presumption, and based on the existing record alone."
Id. at ¶ 42, 490 P.3d at 800-01. Regarding the
 second Williamson test, the division concluded that
 "although venture-specific experience is unquestionably
 relevant, it isn't necessarily required" because the
 material question is whether, "considering the nature of
 the business, the partners collectively possess sufficient
 knowledge and experience to intelligently exercise their
 powers." Id. at ¶ 47, 490 P.3d at 801. As
 to the third Williamson test, the division concluded
 that the trial court's focus on whether the investors
 themselves possessed the skills necessary to replace the
 managing partner was "too narrow." Id. at
 ¶ 51, 490 P.3d at 803. And examining the "other
 economic realities," the division concluded that,

 consistent with Williamson itself, "there may
 be considerations in addition to the three
 Williamson tests that bear on whether an ostensible
 general partnership interest is an investment contract,"
 but the same facts that would lead to the conclusion that the
 interests fail the Williamson tests
"shouldn't be repackaged under a 'catch-all
 economic realities' test . . . absent some articulable
 reason akin to the Williamson tests. . . ."
Id. at ¶ 56, 490 P.3d at 803. The Commissioner
 petitioned for certiorari, which we granted.[4]

 II.
Analysis

 ¶16
We begin by stating the applicable standard of review and the
 principles governing statutory construction. We then explain
 the meaning of "investment contract" under Colorado
 and federal law before we turn to Williamson-which
 essentially sets out an approach to determining whether a
 joint venture or general partnership satisfies the third
 prong of the investment contract test established by the
 Supreme Court in Howey. We conclude that
 Williamson does not require

 starting with a "strong presumption" that a general
 partnership is not a security. Neither is such a presumption
 an appropriate gloss on Williamson's insights
 because it suggests that general partnerships are protected
 from the reach of the securities laws by imposition of a
 heightened burden of proof that is not included in state or
 federal securities laws. Instead, what Williamson
 recognized, and we accept here, is simply that a venture
 operating as a bona fide general partnership will likely not
 satisfy the third prong of the Howey investment
 contract test because general partners are not passive
 investors. The Williamson opinion elaborated three
 distinct factual scenarios that could demonstrate that a
 general partnership in name might nonetheless satisfy the
 Howey test. We conclude here that
 Williamson's elaboration of these scenarios is a
 helpful approach, and we consider four aspects of the
 approach that the parties contest and that received different
 treatment in the two different division opinions below.

 A.
Standard of Review and General Principles

 ¶17
We review questions of statutory interpretation de novo.
Thompson v. People, 2020 CO 72, ¶ 22, 471 P.3d
 1045, 1051. In interpreting a statute, we aim to identify and
 then give effect to the General Assembly's intent.
Id.

 ¶18
 As directed by the legislature, we construe provisions of the
 CSA broadly to effectuate its purposes "to protect
 investors and maintain public confidence in securities
 markets while avoiding unreasonable burdens on participants
 in capital

 markets." § 11-51-101(2), C.R.S. (2021). The CSA is
 "remedial in nature." Id. Further, its
 provisions are to be coordinated with referenced federal law
 "to the extent coordination is consistent with both the
 purposes and of the provisions of" the CSA. §
 11-51-101(3). Indeed, we have consistently recognized that
 "insofar as the provisions and purposes of our statute
 parallel those of the federal enactments, such federal
 authorities are highly persuasive." Cagle v. Mathers
 Fam. Tr., 2013 CO 7, ¶ 19, 295 P.3d 460, 465
(quoting Lowery v. Ford Hill Inv. Co., 556 P.2d
 1201, 1204 (Colo. 1976)).[5]

 B.
The Meaning
of "Investment
Contract" in the CSA

 ¶19
 This dispute hinges on whether the ventures established by
 HEI and HEDC are "investment contracts" and
 therefore securities under the CSA. See §
 11-51-201(17), C.R.S. (2021) (including "investment
 contract" in definition of "security").
"Investment contract" is not defined in the CSA,
 but we have adopted as our own the three-part test set forth
 by the Supreme Court in Howey, when it interpreted
 the same term's meaning under the federal securities
 acts. See

Thompson, ¶ 26, 471 P.3d at 1052 (noting that
 we adopted the Howey test in 1976); Lowrey,
 556 P.2d at 1204-05. Under the Howey test "an
 'investment contract' is: (1)a contract, transaction,
 or scheme whereby a person invests his or her money (2)in a
 common enterprise and (3) is led to expect profits
 [substantially] derived from the entrepreneurial or
 managerial efforts of others." Toothman v. Freeborn
 & Peters, 80 P.3d 804, 811 (Colo.App. 2002); see
Howey, 328 U.S. at 298-99; Lawrence v. People,
 2021 CO 28, ¶ 31, 486 P.3d 269, 276. The advantage of
 this test is that it "is capable of adaptation to meet
 the countless and variable schemes devised by those who seek
 the use of the money of others on the promise of
 profits." Howey, 328 U.S. at 299. The approach
 thus serves the purposes of the CSA as a remedial statute
 designed to be broad in scope. See Thompson, ¶
 24, 471 P.3d at 1051-52.

 C. The
 Williamson Tests

 ¶20
 The question that confronts us here, and that confronted the
 Fifth Circuit in Williamson, is whether a venture
 that is denominated as a general partnership can meet the
 third prong of the Howey test-that the investors
 expect to make a profit substantially derived from the
 efforts of others. In analyzing this question, the Fifth
 Circuit first concluded that passive investments and general
 partnerships are generally distinct, given the nature of
 general partnerships. See Williamson, 645 F.2d at
 422. It then set out three non-exhaustive tests that might
 prove that a general partnership interest is an
 "investment contract" within the federal acts'

 definitions of "securities." Id. at 417,
 419-23. Although several decisions of the court of appeals
 have cited Williamson approvingly, see
Toothman, 80 P.3d at 811; Feigin v. Digital
 Interactive Assocs., Inc., 987 P.2d 876, 882
(Colo.App. 1999); see also Joseph v. Mieka Corp.,
 2012 COA 84, ¶¶ 18-22, 282 P.3d 509, 514-15, we
 have not previously considered whether it should apply when
 evaluating general partnerships under the CSA. This is the
 question we turn to now.

 ¶21
Williamson identified three features of general
 partnerships. First, general partners maintain control of the
 business venture. Williamson, 645 F.2d at 421-22.
This is true even if they delegate day-to-day management
 responsibilities, id. at 421, though the joint and
 several liability for debts and obligations that attends
 general partnership typically incentivizes active engagement
 or wise delegation of management duties, see Secs. &
 Exch. Comm'n v. Merch. Cap., LLC, 483 F.3d 747,
 755-56 (11th Cir. 2007). Second, general partners have rights
 to access information. Williamson, 645 F.2d at
 421-22, 424. Third, relatedly, because the "partnership
 powers are not in the nature of a nominal role in the
 enterprise," "[a]n investor who is offered an
 interest in a general partnership or joint venture should be
 on notice . . . that his ownership rights are significant,
 and that the federal securities acts will not protect him
 from a mere failure to exercise his rights."
Id. at 422.

 ¶22
 In sum, general partners have the "sort of influence
 which generally provides them with . . . protection against a
 dependence on others." Id. In contrast,
 dependence on others "is implicit in an investment
 contract." Id. at 423.

 ¶23
 But Williamson made clear that "the mere fact
 that an investment takes the form of a general partnership or
 joint venture does not inevitably insulate it from the reach
 of the federal securities laws." Id. at 422.
This is because "in searching for the meaning and scope
 of the word 'security' in the Act[s], form should be
 disregarded for substance and the emphasis should be on
 economic reality." United Hous. Found., Inc. v.
 Forman, 421 U.S. 837, 848 (1975) (quoting Tcherepnin
 v. Knight, 389 U.S. 332, 336 (1967) (second
 alteration in the original)); see also Lowery, 556
 P.2d at 1205 ("The hallmark of state and federal
 securities regulation has always been close attention to the
 facts of each case and a substantive appraisal of the
 commercial realities of the offering."). Thus, under the
 third prong of the Howey test, Williamson
 explained, "a partnership can be an investment
 contract [but] only when the partners are so dependent on a
 particular manager that they cannot replace him or otherwise
 exercise ultimate control." 645 F.2d at 424 (emphasis
 added). With this in mind, the Fifth Circuit described three
 circumstances, any one of which might demonstrate that a
 particular general partnership interest satisfies the
 Howey test:

A general partnership or joint venture interest can be
 designated a security if the investor can establish, for
 example, that (1) an

 agreement among the parties leaves so little power in the
 hands of the partner or venturer that the arrangement in fact
 distributes power as would a limited partnership; or (2) the
 partner or venturer is so inexperienced and unknowledgeable
 in business affairs that he is incapable of intelligently
 exercising his partnership or venture powers; or (3) the
 partner or venturer is so dependent on some unique
 entrepreneurial or managerial ability of the promoter or
 manager that he cannot replace the manager of the enterprise
 or otherwise exercise meaningful partnership or venture
 powers.

Id.

 ¶24
Williamson identified the unusual circumstances in
 which a venture legally titled a general partnership might
 nonetheless be an investment contract in light of the actual
 economic realities at play. Because this approach allows for
 individualized scrutiny of the economic realities of a given
 instrument or scheme, and because it provides a clear means
 of applying the third prong of Howey, we conclude
 that the Williamson approach does apply to the CSA.
That conclusion does not, however, fully answer the questions
 we face here. Williamson has been interpreted in
 varying ways in state and federal courts around the country.
We explain below how it should be applied to the CSA.

 1.
There is No
"Strong
Presumption" under
the CSA
that a General Partnership is not an
 Investment Contract

 ¶25
 The division below interpreted Williamson as
 establishing a "strong presumption" that an entity
 designated as a general partnership is not an investment
 contract. We disagree.

 ¶26
We do recognize, as did the Williamson court, that a
 bona fide general partnership will ordinarily not involve
 passive investment and therefore will not satisfy the third
 prong of the Howey test. Indeed, the Commissioner
 herself acknowledged that in a "legitimate" general
 partnership, "the general partners have the power to
 affect the outcome of the business."[6] As
 Williamson explained, because "meaningful
 powers possessed by joint venturers under a joint venture
 agreement do indeed preclude a finding that joint venture
 interests are securities," plaintiffs "have an
 extremely difficult factual burden" if they are to prove
 that investors in a titular general partnership actually
 expected profits from the managerial efforts of others. 645
 F.3d at 425.

 ¶27
 In the years since Williamson was decided, the
 difference between the plaintiff's "difficult
 factual burden" to meet its burden of proof and a
 "presumption" about the status of general
 partnerships has led to divergent articulations of
 Williamson's meaning in courts around the
 country. On one hand, many courts do, as the division below
 did, refer to a "presumption" or "strong

 presumption" against classifying general partnerships as
 securities. See, e.g., Secs. & Exch.
 Comm'n v. Shields, 744 F.3d 633, 643 (10th Cir.
2014); Rivanna Trawlers Unltd. v. Thompson Trawlers,
 Inc., 840 F.2d 236, 241 (4th Cir. 1988); Youmans v.
 Simon, 791 F.2d 341, 346 (5th Cir. 1986); Merch.
 Cap., 483 F.3d at 755. But others have done what the
 HEI I division did, and applied Williamson
 without invoking any "presumption." See,
 e.g., Secs. & Exch. Comm'n v. Schooler,
 905 F.3d 1107, 1112 (9th Cir. 2018); Odom v. Slavik,
 703 F.2d 212, 215 (6th Cir. 1983); Secs. & Exch.
 Comm'n v. Telecom Mktg., Inc., 888 F.Supp. 1160,
 1165 (N.D.Ga. 1995); McConnell v. Frank Howard Allen
 & Co., 574 F.Supp. 781, 786 (N.D. Cal. 1983);
Corp. E. Assocs. v. Meester, 442 N.W.2d 105, 107
(Iowa 1989); Casali v. Schultz, 732 S.W.2d 836, 837
(Ark. 1987); Secs. & Exch. Comm'n v. Shreveport
 Wireless Cable Television P'ship, No. Civ.A.
 94-1781, 1998 WL 892948, at *5-7 (D.D.C. Oct. 20, 1998);
see also Digital Interactive, 987 P.2d at 882-83
(applying Williamson to determine probable cause in
 context of a challenge to a search warrant); Mieka,
 ¶ 22, 282 P.3d at 515 (declining to address whether a
 presumption is appropriate); Pfohl v. Pelican
 Landing, 567 F.Supp. 134, 137 (N.D. Ill. 1983)
(describing Williamson without mentioning the
 presumption).

 ¶28
We conclude here that the second approach is more consistent
 with the CSA. First, the burden of proof in a civil action
 such as the civil enforcement of securities laws "shall
 be by a preponderance of the evidence." §
 13-25-127(1), C.R.S. (2021).

 That
 burden rests with the plaintiff-here, the Commissioner. As we
 have explained in other contexts, in evidence law, a
 presumption "shifts the burden of going forward to the
 party against whom it is raised." Krueger v.
 Ary, 205 P.3d 1150, 1154 (Colo. 2009); see also
CRE 301; People v. Hoskin, 2016 CO 63, ¶ 10,
 380 P.3d 130, 134. Because the plaintiff already bears the
 burden of proof in a civil enforcement action, the concept of
 a "presumption" being applied on top of that burden
 suggests some kind of heightened threshold that the plaintiff
 must reach. Indeed, at least one court has said as much.
See Youmans, 791 F.2d at 346 ("[A] strong
 presumption remains that a general partnership or joint
 venture interest is not a security. A party seeking to prove
 the contrary must bear a heavy burden of proof."). The
 CSA includes no such heightened burden for a plaintiff
 seeking to prove that a general partnership is operating as
 an investment contract.

 ¶29
 Second, application of a presumption beyond the established
 burden of proof ignores a core tenet of securities law:
 Courts should look to the substantive, economic realities of
 a particular instrument, scheme, or transaction when
 determining whether it fits the definition of a security.
Cagle, ¶ 26, 295 P.3d at 467; Lowery,
 556 P.2d at 1205; see also Landreth Timber Co. v.
 Landreth, 471 U.S. 681, 686 (1985); Int'l Bhd.
 of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.
 v. Daniel, 439 U.S. 551, 558 (1979);
Tcherepnin, 389 U.S. at 336. And while the economic
 realities of a general partnership that is in fact operating
 as a general partnership

 will tend to show that it is not an investment contract, the
 obligation to look at economic realities requires an
 examination not only of form but also of the substance of a
 particular venture.

 ¶30
 Accordingly, courts evaluating whether a general partnership
 is an investment contract under the CSA should not start with
 any presumption beyond that necessarily created by the fact
 that the plaintiff carries the burden of proof to demonstrate
 that a particular interest is a security. Instead, courts
 should examine the economic realities of the venture,
 requiring the plaintiff to demonstrate the existence of an
 investment contract by a preponderance of the evidence.
Respondents argue that the presumption plays an important
 role in business: It lends transactions a degree of
 predictability and certainty because it not only alerts
 investors who join partnerships that the securities laws will
 not protect them, but it also clarifies for promoters how to
 comply with regulatory requirements. Yet just as the form of
 a venture cannot insulate it from the reach of the securities
 laws, the absence of a presumption will not convert a venture
 into an investment contract if it is not one under
 Howey. We are not today altering the definition of
 investment contract, nor are we departing from other courts
 in recognizing that the economic realities of a bona fide
 general partnership are such that ordinarily it would not be
 an investment contract.

 ¶31
Williamson offers helpful guidance on how to analyze
 the substantive, economic realities of a particular general
 partnership. We turn now to the three aspects of this
 guidance about which the parties disagree.

 D. The
 Williamson Framework

 ¶32
 As we have discussed, general partnership interests are not
 ordinarily investment contracts because they grant partners
 control over significant decisions of the enterprise.
However, they may be investment contracts when "the
 general partner in fact retains little ability to control the
 profitability of the investment." Merch. Cap.,
 483 F.3d at 755. Williamson identified three
 specific situations in which that might occur. Two of those
 are in dispute here.

 1.
Williamson Test Two

 ¶33
Williamson recognized that a general partnership may
 be an investment contract if "the partner or venturer is
 so inexperienced and unknowledgeable in business affairs that
 he is incapable of intelligently exercising his partnership
 or venture power." 645 F.2d at 424. The logic of this
 exception is straightforward: A partner who cannot exercise
 powers intelligently is dependent upon the investment's
 promoter or manager. See id. at 423. Dependent
 investors cannot protect themselves, are led to expect
 profits from the efforts of others, and thus require the
 protection of securities laws. See id.

 ¶34
 The Commissioner argues that courts should look to
 investors' venture- or industry-specific knowledge. She
 urges us to conclude that only that specific knowledge will
 ensure that investors can exercise partnership powers
 intelligently. But we think that approach would be too
 narrow. Certainly, as the division below recognized,
 specialized knowledge or lack thereof may be relevant to the
 question of whether investors can exercise their partnership
 powers. But it does not follow that a lack of
 industry-specific knowledge, regardless of the nature of the
 underlying venture or the partner's level of
 sophistication, renders that partner dependent on the
 manager. In Williamson, for example, the court
 concluded that an investor's position as a corporate
 director in the food production industry constituted adequate
 knowledge and experience for a real estate venture.
Id. at 424-25; see also Robinson v. Glynn,
 349 F.3d 166, 170-72 (4th Cir. 2003); Holden v.
 Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).
Undoubtedly, there are circumstances in which a lack of
 specialized knowledge or experience would be probative of an
 inability to exercise partnership powers meaningfully, and
 courts should certainly look to that evidence when relevant.
But specialized knowledge is not always required.

 ¶35
 The division below surveyed cases applying this
 Williamson test and set out a list of questions that
 courts might consider when determining whether investors
 possess sufficient knowledge or experience:

(1) Do the partners generally have some prior business
 experience?

(2) What was the nature of that experience, both in their
 investing and in their other business dealings?

(3) "Are the partners otherwise financially
 sophisticated?"

(4) Did the partners hold themselves out as being experienced
 in business?

(5) Do the partners in fact have experience in the same type
 of business venture or industry?

(6) Is the nature of this particular venture such that
 industry- or venture-specific experience would be essential?

(7) Did the partners consult counsel or indicate that they
 would do so?

(8) Did the partners in fact exercise partnership powers?

(9)"Did the partners previously invest in one of the
 defendant's businesses?"

(10) "How did the partnership acquire its members?"

(11) How much meaningful access to information about the
 venture is available to the partners?

HEI II, ¶ 48, 490 P.3d at 802. We agree that
 these questions, among others that might be appropriate to
 the facts of a particular case, are helpful in evaluating the
 economic realities of a venture to determine whether
 investors are true general partners or are in fact passive
 investors because of their inability to meaningfully exercise
 their partnership powers.

 2.
Williamson Test Three

 ¶36
Williamson recognized that,

[a] genuine dependence on others might also exist where the
 partners are forced to rely on some particular
 non-replaceable expertise on the part of a promoter or
 manager. Even the most knowledgeable partner may be left with
 no meaningful option when there is no reasonable replacement
 for the investment's manager.

 645
 F.2d at 423. Thus, a general partnership may be an investment
 contract if "the partner or venturer is so dependent on
 some unique entrepreneurial or managerial ability of the
 promoter or manager that [they] cannot replace the manager of
 the enterprise or otherwise exercise meaningful partnership
 or venture powers." Id. at 424.

 ¶37
 The dispute between the parties regarding this test hinges on
 whether the Commissioner must prove only that the partners
 themselves could not realistically step into the shoes of HEI
 and HEDC if they wanted to, or whether the Commissioner must
 prove that the partners could not exercise their partnership
 powers to find a replacement manager who would fit the bill.

 ¶38
 On that question, it is clear that partners can delegate
 day-to-day management responsibilities but still retain
 ultimate control over the business; they do not themselves
 need to have the skills to manage the venture in place of the
 manager. See, e.g., Holden, 978 F.2d at
 1123 ("A showing that the general partners do not
 possess the skills or abilities required to fill the
 manager's shoes

 simply is insufficient."). "So long as the investor
 retains ultimate control, [they have] the power over the
 investment and the access to information about it which is
 necessary to protect against any unwilling dependence on the
 manager." Williamson, 645 F.2d at 424. But if
 the "partners are so dependent on a particular manager
 that they cannot replace him or otherwise exercise ultimate
 control," then the partners are not truly active
 investors, and the venture might be an investment contract.
Id.

 ¶39
 On this test, HEI II remanded to the trial court for
 further findings in part because it was not clear on the
 record whether the trial court looked only to whether the
 partners themselves could replace the manager. HEI
 II, ¶¶ 50-52, 490 P.3d at 802-03. We agree
 that this question requires clarification of the record here.
On remand, the court should consider whether the general
 partners can realistically, in accordance with their
 partnership powers, find a reasonable replacement for the
 manager.

 3.
Other Economic Realities

 ¶40
 To determine if a given instrument or scheme is a security
 requires "close attention to the facts of each case and
 a substantive appraisal of the commercial realities of the
 offering." Lowery, 556 P.2d at 1205. Consistent
 with this approach, Williamson qualified its three
 tests as nonexhaustive-they are examples of the unusual
 situations in which a general partnership meets the
 Howey test, and they

 were the tests that were relevant (and unsatisfied) in that
 particular case. Williamson, 645 F.2d at 424 n.15.
We similarly recognize that the three tests are not exclusive
 and cannot trump or restrict courts' obligation to look
 to the "substantive economic realities underlying the
 transaction," Cagle, ¶ 26, 295 P.3d at 467
(quoting Viatica Mgmt., 55 P.3d at 266).

 ¶41
 The HEI II division cautioned that (1)
Williamson's three tests provide room for
 analysis of a range of facts, and, (2) if facts are perceived
 to be relevant but do not fit one of the three exceptions,
 then the economic realities that the court looks to should
 "be articulated in terms of some relatively concrete
 principle that will assist the court in deciding whether the
 partners were 'led to expect profits derived from the
 entrepreneurial or managerial efforts of others.'"
HEI II, ¶ 60, 490 P.3d at 804 (quoting
Toothman, 80 P.3d at 811). Here, the Commissioner
 asserts that HEI II disregarded
 "longstanding," "well-established"
 federal and Colorado law by narrowing the catch-all, open
 nature of the types of "economic realities" courts
 may consider when determining whether a general partnership
 is an investment contract. But HEI II was not nearly
 as restrictive as the Commissioner claims. Notably, it did
 not clearly foreclose the trial court from considering the
 various facts that the Commissioner puts forth as the
 material facts in this case (facts that are not at issue
 before us today).

 ¶42
 An overly expansive approach to "economic
 realities" would effectively undermine the value of
 applying Williamson to the particular context of
 general partnership interests. As may be clear by now, we
 find the logic of the Williamson framework
 compelling, and we consider the framework bound by both the
 principles of general partnerships and the Howey
 test.

 III.
Conclusion

 ¶43
 When faced with an assertion that an interest in a general
 partnership is an investment contract and thus within the
 CSA's definition of a "security," the plaintiff
 bears the burden of proving this claim by a preponderance of
 the evidence. No presumption beyond that burden applies.
Accordingly, we reverse the court of appeals' judgment on
 the question of whether courts should apply a "strong
 presumption," and we remand the case to the trial court
 for further findings consistent with this opinion.

---------

[1] Charles Reed Cagle, HEI's
 president; Brandon Davis, HEDC's president; and John
 Schiffner and James Pollak, affiliates of and sales
 representatives for HEI and HEDC, are also respondents in
 this dispute.

[2] The Texas Revised Partnership Act was
 adopted in 1994 but has since been replaced with the Texas
 Business Organization Code. See Tex. Bus. Orgs. Code
§§ 152, 154; Energy Transfer Partners, L.P. v.
 Enter. Products Partners, L.P., 593 S.W.3d 732, 737 n.9
(Tex. 2020). The Texas Supreme Court has observed that the
 new rules and the old rules for determining partnership
 formation are "substantially the same." Ingram
 v. Deere, 288 S.W.3d 886, 894 n.4 (Tex. 2009).

[3] The Fifth Circuit described these
 scenarios as the "limited circumstances" in which a
 general partnership would be a security because it would not
 accord the general partners "meaningful powers,"
Williamson, 645 F.2d at 425-circumstances it also
 called "factors," id. at 424, 425, 427.
Courts applying Williamson have since used a variety
 of terms to refer to these circumstances. E.g.,
 Secs. & Exch. Comm'n. v. Merch. Cap.,
 LLC, 483 F.3d 747, 755 (11th Cir. 2007) ("three
 situations" that are each "factors"); Rome
 v. HEI Res., Inc., 2014 COA 160, ¶ 12, 411 P.3d
 851, 851 ("factors" that form a "three-factor
 test"); Rivanna Trawlers Unltd. v. Thompson
 Trawlers, Inc., 840 F.2d 236, 240 (4th Cir. 1988)
("narrow exception[s]"). We refer to the three
 scenarios as separate "tests" because they
 represent independent means for assessing whether the
 partnership is an investment contract. See HEI II,
 ¶ 3 n.2, 490 P.3d at 793 n.2 (explaining the use of
 "tests").

[4] We granted certiorari to review the
 following issues:

1. [REFRAMED] Whether the court of appeals erred by
 holding that Colorado should apply a "strong
 presumption" that a general partnership is not a
 security.

2. Whether the court of appeals erred in its
 interpretation of the Williamson tests.

[5]We reject the Commissioner's
 argument that this alignment with federal law where
 appropriate does not encompass federal case law. As we said
 recently in Thompson, "although we are not
 bound by federal law in construing the CSA, we deem federal
 authorities persuasive, given that the provisions and
 purposes of the CSA parallel those of federal
 enactments." ¶ 26, 471 P.3d at 1052. We have not
 previously limited our understanding of what "federal
 authorities" includes to legislative enactments and we
 decline to do so here.

[6] Similarly, amicus curiae
North American Securities Administrators Association, Inc.,
 writing in support of the Commissioner, explained, "In
 an appropriately formed and structured general partnership,
 the partners do not have such an expectation [of profits to
 come from the efforts of others] because they control the
 enterprise."

---------